Good morning, your honors. May it please the court, my name is Ron Freshman. I represent Cameron DeSchmidt. Okay, so do you want to reserve a little time for a rebuttal? A few minutes, yes, your honor. You want to be a little more precise about that? Three, four minutes. Anyway, before the court, essentially, I think the three issues that stand out to me, for me, that's been brought up by the other side, by the respondents, is the alleged regarding perjury, me perjuring myself to the court, as the judge essentially said. And then the third thing is a ministerial act. So I'll get into the alleged prejudice. Essentially, what's before the court is that is whether the... Let me interrupt you and hit you with the first thing that strikes me about this case, and that is that you did get the case reopened once. You did get a chance to file amended schedules. You explained how you talked to the trustee, but then you did file a motion to amend schedules a couple weeks after the deadline, right? I believe that's accurate. So, but you're saying you basically are entitled to, and that was three tries all together to get the case reopened. You say you're entitled to another chance after that chance. Why should there be another chance? Should there be an end to this at some point? Understood, Your Honor. Yes. Each time that there was an issue, I went back to the trustee and we kind of had a little tête-à-tête, if you will. And each time, he didn't advise me, because he knows better than that. But what he did do is say, here's how I think it would go. Each time that happened, I responded accordingly. And I said, well, I'm going to let it, we should just let it close. But what he said was going to happen was the case would be closed and your client get the claims back. Right. That's utterly wrong. That's just not the way it works. I understand. And what does a court do with that? I mean, I had a conversation with the trustee. That's lovely. I mean, if that's what the trustee said, that's terrible. Call it advice, call it whatever you want. It was encouragement, Your Honor, to do that. And then there, of course, was the issue that the court said, no, you didn't say that, freshman. What you did say is the following. And he, you know, essentially brandished me in front of the court, my colleagues, making me look like a liar. I took the time. I got the transcript. I reviewed it. And I came back to the court and I said, Your Honor, you're wrong. And here's what happened. The court did not have the grace, the courtesy, or the... I think he did, at the later hearing, grudgingly agree with you, I think. Begrudgingly. That's probably... I'm trying to take, I understand your point on that. I'm trying to maybe take you a step beyond that. And, you know, the rule's the rule. If the asset's not disclosed, it doesn't get abandoned. Period. That's the way it works. The trustee seems to have told you something different. But can the trustee change the rule? No. No, Your Honor, the trustee can't change the rule. But my understanding of it was to let it essentially ride. But nothing... But even after the deadline, you did file the motion to amend the schedule. And that is before the court. The amended schedule is there and the claims are there. I mean, I think the other thing that's important is that the respondents are not creditors. Respondents are defendants in a civil matter. Well, I'm going to ask you about that, too, because you say they're not creditors because the mortgage was foreclosed. That extinguishes the debt. Yes. But you say the foreclosure was improper. That's true. So how is there actually a foreclosure? If the foreclosure was defective and ineffective, how could it simultaneously be effective to destroy the debt? Because the resulting foreclosure granted possession to a party not entitled to receive it because it was not only not the foreclosing beneficiary, but it was not the beneficial note holder. But the implication of that is the foreclosure sale was defective. Yes. Didn't work. Correct. So why should it work to destroy the debt? Well, as a matter of law, when you have a trustee's deed upon sale and it's recorded, who's going to get the possession? My client? Even if a deed of sale is set aside because the foreclosure sale was improper? It should have been. It should have been. It should have been tried, Your Honor. And if you go back to... I'm just trying to reconcile the consistency in your position. Yes. I don't see how you can say the foreclosure was no good and also say the foreclosure wiped out the debt. Because the reality is there was a foreclosure. That is an actual fact. What I believe should happen is that it should get remanded and be tried, not summary judgment. Okay. Well, that's not that part of it. That's in the state court system. Right. No, I understand. I But the factual reality is that it was foreclosed. But if the foreclosure is, if you're successful, the foreclosure is set aside, if that happens, isn't that also going to revive the debt? It's not so much that the foreclosure is revived. Essentially, there would be a trial on the merits. If you win at that, yeah. But we can't use speculation to guide us here. Sure. But you can't use speculation to say they're not a creditor. It's the same speculation. No, because they admitted they weren't. There's a fact. They specifically said, Fannie Mae comes in at the tail end and says, it's me, I own it. That's a little different point. And then Nation Star is the one who foreclosed. That's a different point. I understand. But we're talking facts, and those are the facts. I can't change the facts, Your Honor. All I can do is say, if my client actually had a trial, the facts might be different. But it also could be found that that was wrong. We have to deal with specific facts. The fact is, foreclosure occurred. Because foreclosure occurred, that's what I'm dealing with. So anyway, that's where I'm at with that particular argument. And then the other thing, Your Honors, is that it's a ministerial act. My client's claims are going to be hanging out, languishing in Never Never Land, essentially. They're not really in Never Never Land. They're in the trustee's hands. Because they're not abandoned. They're property of the estate. But the trustee has no interest in it. Well, a lot of things could happen. We don't know that either. Talk about speculation. If the trustee gets those claims, he may pick up the phone and call Nation Star and say, have I a deal for you? And then you'll be in that position, which is not amiable. I'm not sure about what that might be. But I can tell you that they've sat on their thumbs. They haven't done anything since the foreclosure. The property's sitting vacant, empty, unattended. That's not the issue. But whether it's that issue or not, that's another story. But essentially, I mean, those are the points, essentially, is that essentially they are not creditors. They are defendants in the civil matter. I don't believe that that ensures status of standing to them. Any purported prejudice. I don't see any purported prejudice to a non-creditor. They don't have an interest here. And I discussed the alleged perjury to me. But we have provided case law that says a ministerial act, such as amending the schedules and having those claims. And those are all before the court. And I guess the one thing that's important is the court denied it based on my declaration being perjurious. And there were no assets. Before that court was the appellate opinion of June 20th stating that claims were assets of the appellate. Additionally, in the register of actions, in the complaint filed in 2021, there were actual claims against the respondent. So for the courts to basically say, no, you lied, freshman. Oh, and there are no assets is absolutely incorrect. 100%. And I can't square, that's why I'm here. I can't square that. And introspect. Thank you. Good morning, Your Honors. May it please the court. Christine He here with Trautman Pepper on behalf of the parties in interest and appellees here. Nation Star Mortgage, Fannie Mae, and MERS. Your Honor, I think I'll just address what I think is completely incorrect. I'll start with this. The basis of the court's denial of the motion to reopen. First, counsel is suggesting that it was based on the alleged perjury. The court's already noted that in the motion for reconsideration, the court discussed that at length and said that was not the basis for the denial. Second, the court said that there was no cause to reopen in the order. Says there's no evidence of any assets. The only thing that was in the initial motion was the declaration from counsel, but also a list of causes of action. So that was it. There was no discussion of the causes of action or whether or not there was any merit to them or if they were viable. Second of all, the appellate opinion that counsel continues to refer to as showing that there was assets, that is not the case at all. If you read the appellate opinion, it's in the record. That's from the appellate division of the unlawful detainer action, and that just said there wasn't sufficient evidence to prevail in summary judgment. And remanded for a trial. Well, that's that's an indication there's something there on on the plaintiff side, right? Mr. Dishman side. Well, what was what the issue was when you looked at it going back into the unlawful detainer court was that the documents weren't authenticated, so they needed another witness. And so that does show that there wasn't sufficient to prevail in summary judgment, but that's not showing that that's not dispositive. The court didn't make the ruling that not dispositive either way. Correct. Correct. So there there's still something hanging out there. Well, that's certainly the debtor's position that would that would not be our position, obviously, but what's this is not in the record, but it's probably judicially noticeable. What's happened in the UD case? Well, the first there was a couple of appeals that first appeal when it was reversed. Then the then he had already left the property. So when they went back for trial, the unlawful detainer court had said, well, there's nothing to consider here because you're not seeking damages. So then there was an attempt to get restitution on an unlawful eviction cause of action, and then the court denied that denied restitution. That's a claim by Mr. Dishman. Correct. Correct. He he wanted the money for being the allegation is wrongfully kicked out of the house despite not having paid anything since 20. OK, so but then that went on appeal and then that was recently the court's decision and dismissing the case that was affirmed. And then I understand that there was a petition for a rehearing, and I think that was just denied. So that's the status of the unlawful detainer. Um, the civil case is on appeal as well. It sounds like just so I understand sound like that in the in the UD case and that unlawful eviction case. Is there a court decision that the foreclosure was correct? No, not one way or the other. OK, no, he had already in the unlawful detainer action moved out, right? And so it was no longer an issue in that court that that would be proper in the civil case, but he never cured the defect problem or the standing defect. And we never had an opportunity. We briefed it many, many times. I briefed it. We briefed it on behalf of our clients many times, but we've run up against the standing. He hasn't cured the standing. We've no, we've argued it. He never, you know, and so that's that gets to the prejudice. And, you know, obviously we would have preferred a ruling on the merit in the 2017 case, but we didn't get that. We didn't get a ruling on the merits in the 2021 case because he still didn't cure the standing defect. So that's a significant prejudice to these defendants, regardless of the whether they're creditors. And the court made a brilliant argument that if there is a wrongful foreclosure cause of action, then they they are creditors because then their claims would be wiped out. And I would just say finally that this is not a situation where this is an innocent debtor and that is here to protect, you know, that that we want the bankruptcy court to protect them and give them a fresh start. This is a debtor who has abused the bankruptcy statutes. And I think that's important in whether or not I think the court should consider that and whether or not to continue to reward him for this gamesmanship. And I would submit on that, Your Honor, unless there are questions. Thank you. Thank you very much. Appreciate it. Only one issue that I would like to bring up is, which is the last, the not an innocent debtor. My client was seeking a loan modification. NationStar lied to my client, clearly stating you are not eligible for a HAMP. We don't offer it. Fannie Mae is a government lender. They are required, if somebody's eligible, and they, and my client was in fact eligible, but because they lied, they filed false documents in the public records. They lied to my client and deprived him of getting a simple loan modification. That's all I have to say on that. Any questions? Okay. Submitted. We'll get you a written decision as soon as we can. Thank you very much. Thank you. And we're adjourned. That concludes the calendar.
judges: Lafferty, Faris, and Gan